786 F.2d 724
 Thomas L. ORANGE, Petitioner,
v.
ISLAND CREEK COAL COMPANY; Old Republic Companies;
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
 No. 84-3501.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 19, 1985.
Decided March 25, 1986.
 
 Thomas M. Rhoads argued, Rhoads & Rhoads, P.S.C., Madisonville, Ky., for petitioner.
 Benefits Review Bd., Washington, D.C., J. Michael O'Neill, Rita Roppolo, Washington, D.C., Stephen E. Embry, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., Allen R. Prunty argued, for respondents.
 Before MILBURN, Circuit Judge, EDWARDS, Senior Circuit Judge, and SILER, Chief Judge.*
 SILER, Chief Judge.
 
 
 1
 The petitioner/claimant, Thomas L. Orange, brought this action under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 921(c) (1978), for review of a decision by the Benefits Review Board (Board), denying his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945 (1971 & Supp.1985). The Board affirmed the Administrative Law Judge's (ALJ's) decision that Orange was not entitled to benefits despite the finding that he was entitled to the interim presumption of disability under 20 C.F.R. Sec. 727.203(a)(4). Orange argues for reversal of the Board's decision: (1) because the medical opinions upon which the decision is based are not well reasoned, and (2) because the ALJ's decision demonstrates bias.
 
 
 2
 The issues to be decided by this Court are whether there is substantial evidence in the record to uphold the ALJ's decision and/or whether the Board committed any error of law or failed to adhere to the statutory standard governing its review of the ALJ's factual determinations. Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251 (6th Cir.1983). For the reasons stated herein, we affirm the Board.
 
 
 3
 Claimant is a 65 year-old non-smoker who spent 31 years around coal mines, 10 years underground and 21 years at the tipple. After breathing problems forced his retirement at age 56, he filed this claim for benefits on June 28, 1976.
 
 
 4
 The ALJ denied the claim twice. He first held that claimant was not entitled to invocation of the 20 C.F.R. Sec. 727.203(a) interim presumption. The Board reversed this decision, holding that the ALJ had improperly weighed the evidence in determining that Orange was not entitled to the presumption under 20 C.F.R. Sec. 727.203(a)(1), (a)(2), and (a)(4)[1] and because the ALJ failed to consider the claimant's eligibility for benefits under Part 410, 20 C.F.R. as required by 20 C.F.R. Sec. 727.203(d).[2]
 
 
 5
 It was remanded primarily due to the Board's decision in Stiner v. Bethelem Mines Corp., 3 BLR 1-487 (1981), where it held that a single documented medical opinion from a physician exercising reasoned medical judgment, which establishes the presence of a totally disabling pulmonary or respiratory impairment, is sufficient to invoke the interim presumption under Section 727.203(a)(4). Later, the Board discontinued the practice, and the requirements of the Board are now that all relevant documented medical opinions must be considered in determining whether the presumption under Section 727.203(a)(4) should be invoked. Nevertheless, the remand by the Board was to the claimant's advantage, so reversal would not be required, as it was in Consolidation Coal Co. v. Sanati, 713 F.2d 480 (4th Cir.1983).
 
 
 6
 The ALJ again denied the claim on remand. He found that Orange was entitled to the presumption under 20 C.F.R. Sec. 727.203(a)(4) (reasoned medical opinion), but not under (a)(1) (X-rays) or (a)(2) (ventilatory studies). After reviewing the evidence, the ALJ held that the presumption was rebutted under Section 727.203(b)(4) and Orange was not eligible for benefits under Part 410, 20 C.F.R. The Board affirmed.
 
 
 7
 Although there were some positive readings of X-rays by physicians, claimant has not raised as error the failure of the ALJ to find a presumption under Section 727.203(a)(1), (2) or to find, alternatively, eligibility under Section 727.203(d). Thus, as posed by the claimant, the issues are restricted to whether there was substantial evidence to uphold the ALJ's decision pertaining to the rebuttal of the Section 727.203(a)(4) presumption and whether the ALJ's decision should be vacated due to bias by the ALJ.
 
 
 8
 The record contains widely disparate medical opinions on the extent of Orange's disability. Dr. Neal Calhoun examined claimant on July 26, 1976, and noted that he had symptoms of chronic lung disease. He reviewed a chest X-ray taken by Radiology Associates, and he determined that it showed pneumoconiosis, category 1/2, type q. (The same X-ray was interpreted by Dr. Crowder and Dr. W. Davis in September, 1976, to show category 1/1, type q, pneumoconiosis.) Dr. Calhoun also reviewed pulmonary function studies by Dr. Frank Pitzer and staff at Jennie Stuart Memorial Hospital. The tests, on which Orange was noted to have put forth maximal effort, showed a moderately severe reduction in vital capacity, a marked reduction in forced expiratory volume, and a marked reduction in maximal ventilatory volume. Based on these tests, Dr. Calhoun concluded that Orange was a pulmonary cripple. His diagnosis was "[c]oal miner's pneumoconiosis, far advanced, crippling and disabling the patient 100% for coal mining or similar work."
 
 
 9
 Dr. William Anderson examined Orange on August 22, 1976, and interpreted an X-ray as indicating pneumoconiosis, category I. (This X-ray was later re-read as negative by Dr. Marshall.) Dr. Anderson stated that the results of the pulmonary function study were not reportable because Orange was uncooperative.
 
 
 10
 Dr. Bennett Crowder examined Orange on September 3, 1976, and reported that the anterior/posterior diameter of the chest was increased and the diaphragm appeared to be flattened somewhat. He reviewed an X-ray by Payne, Davis, and Parrott at the Midtown Medical Center in Hopkinsville, and interpreted the X-ray to indicate pneumoconiosis, category 1/1, type q. (This is the same X-ray that Dr. Calhoun interpreted as category 1/2, type q.) Dr. Crowder also reviewed the pulmonary function test performed at Jennie Stuart Memorial Hospital. Except for the fact that breath sounds were absent in the lower two-thirds of the chest, the test results indicated a severe pulmonary impairment not anticipated by interpretation of the X-ray or the physical examination. His final impression was 100 per cent disability from coal mining or similar work due to coal miner's pneumoconiosis.
 
 
 11
 Dr. Ballard Wright examined claimant's case on October 18, 1976, but the physical examination was conducted by Dr. D.C. Hagg. Dr. Hagg noted that Orange was barrel chested with decreased breath sounds over all areas. His impression was emphysema. Dr. Wright interpreted the X-ray as negative but noted that the resting blood gas analysis indicated mild hypoxemia. He also commented that the patient did not give optimal cooperation on the pulmonary function studies. His final diagnostic impression was negative for pneumoconiosis and emphysema.
 
 
 12
 Dr. Thomas Gallo examined claimant on March 29, 1977, and noted that his neck was without venous distention or cervical adenopathy and the chest was clear. Dr. Gallo read an X-ray as negative and an arterial blood gas test as normal. A technician noted poor inspiratory effort on the X-ray and less than maximal effort on the pulmonary function study. Dr. Gallo's impression was arteriosclerotic heart disease with angina pectoris. On cross examination, Dr. Gallo admitted the possibility that Orange could have changes of fibrosis caused by pneumoconiosis which were not detectable on the X-ray. He also admitted that the X-ray could not be used in making any kind of accurate determination as to pneumoconiosis.
 
 
 13
 Dr. Sam Traughber examined claimant on July 20, 1978, and performed an arterial blood gas test and a pulmonary function test. Dr. Traughber found the blood gases within normal limits but found vital capacity slightly less than predicted. The report states that claimant appeared to try to perform the test well and that he had moderately severe combined obstructive and restrictive ventilatory deficit.
 
 
 14
 Dr. William Getty examined claimant on June 21, 1979. The report notes that claimant was being treated by a local physician with long-acting Bicillin, Aminophyllin, and Kenalog injections to help him breathe. Orange told the doctor that his breath just will not go "all the way down," and that Primatine mist inhalers help. Dr. Getty performed a pulmonary function study and an arterial gas study but reported that the results were inconclusive because claimant did not put forth enough effort. He performed a second study on April 11, 1980, and reported good understanding, cooperation, and effort by Orange. The results were normal. His impression was negative for pneumoconiosis and he found minimal bronchitis. He commented that Orange did not suffer from any pulmonary respiratory difficulties that could be construed as pneumoconiosis but that any disability was due to psychic dyspnea and hyperventilation rather than any organic disease. An interpretation of an X-ray by Dr. Eugene Hendershot is appended to Dr. Getty's report but Dr. Getty did not discuss it. The interpretative report indicates that the film quality was acceptable and that the results were negative, but the purpose of the X-ray and any explanation for the negative findings were not indicated or discussed.
 
 
 15
 The Black Lung Benefits Act is remedial and should be liberally construed so that all doubts are resolved in favor of the disabled miner. Haywood v. Secretary of Health and Human Services, 699 F.2d 277, 281 n. 7 (6th Cir.1983). However, decisions of the Board should not be disturbed if supported by substantial evidence, and it is up to the ALJ to resolve conflicting evidence. See Elkins v. Secretary of Health and Human Services, 658 F.2d 437 (6th Cir.1981).
 
 
 16
 The decisions in Hatfield v. Secretary of Health and Human Services, 743 F.2d 1150 (6th Cir.1984); and Haywood, supra, are not controlling in this matter, as they concerned rebuttal of the interim presumption under Subpart B of the Black Lung Benefits Act (20 C.F.R. Part 410). In those cases, the Court held that rebuttal required more than negative X-rays or pulmonary function studies. Instead, in this case, we are applying Subpart C of the Act, using Section 727.203(a)(4), which requires rebuttal under Section 724.203(b)(4) that the miner does not, or did not, have pneumoconiosis.
 
 
 17
 In the case at bar, the ALJ had before him the readings of X-ray films as positive by Drs. Payne, Crowder, Calhoun, Anderson and Davis. Contrary to that were the negative readings of Drs. Sargent, Wright, Gallo and Hendershot. He gave special weight to the interpretation of Dr. Sargent because he was a "B" reader, the higher certification by the National Institute of Occupational Safety and Health, United States Public Health Service. See Moseley v. Peabody Coal Co., 769 F.2d 357, 360 n. 3 (6th Cir.1985). He also considered the interpretations of later films of 1977, 1978 and 1979 to be more persuasive than the 1976 films, as subsequent X-rays should have shown more, not less, evidence of pneumoconiosis, as it is a progressive disease. See Couch v. Secretary of Health and Human Services, 774 F.2d 163, 168 (6th Cir.1985).
 
 
 18
 In addition, although originally rejecting Dr. Traughber's pulmonary function test, the ALJ on remand reconsidered all the ventilatory studies and gave the greatest weight to the most recent study by Dr. Getty, who found claimant had normal results.
 
 
 19
 This Court finds that the evidence cited herein constitutes substantial evidence to uphold the decision of the Board. Cf. Moseley, supra; Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485 (6th Cir.1985) (rebuttal under 20 C.F.R. Sec. 727.203(b)(2), (3)).
 
 
 20
 On the second issue of bias by the ALJ, we do not find any merit in this argument. Claimant has shown that the ALJ adopted in his first decision about twenty-three paragraphs from the employer's brief. However, there is no indication that the second decision from the ALJ adopted any of the employer's brief. Nothing else in the record suggests bias by the ALJ against the claimant. Claimant initially raised the issue after the ALJ's first decision. After the Board found no error, claimant did not raise the issue before the ALJ or the Chief ALJ. Instead, he waited until after the second adverse decision.
 
 
 21
 Thus, he has failed to preserve this issue under the Administrative Procedure Act by not filing an affidavit articulating the facts and reasons justifying the charge. See Marcus v. Director, Office of Workers' Compensation Programs, 548 F.2d 1044, 1050 (D.C.Cir.1976). Adverse rulings in the proceedings are not by themselves sufficient to show bias. See Oliver v. Michigan State Board of Education, 508 F.2d 178 (6th Cir.1974), cert. denied, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975); Knapp v. Kinsey, 232 F.2d 458 (6th Cir.1956).
 
 
 22
 For the reasons stated herein, the decision of the Board is affirmed.
 
 
 23
 GEORGE CLIFTON EDWARDS, Senior Circuit Judge, dissenting.
 
 
 24
 This 66 year-old coal miner, who has worked in the deep coal mines or at deep coal mine tipples for 31 years and whose medical records contain chest x-rays which have been read by five doctors as showing pneumoconiosis, is clearly entitled to benefits contrary to the findings of the Administrative Law Judge and the Benefits Review Board. Mr. Orange has been improperly denied the benefit of the interim presumption under 20 C.F.R. Sec. 727.203. This presumption shifts the burden of proof to his employer to establish that the claimant is (a) doing or is able to do his usual coal mine work, or (b) that total disability did not arise in whole or part out of coal mine employment, or (c) that the miner does not have pneumoconiosis. This record does not in my judgment support either proposition (a), (b) or (c) above.
 
 
 25
 I recognize that several doctors who gave ventilatory tests to claimant reported lack of full cooperation on claimant's part. Others, however, reported good cooperation. I do not think this issue should control where 1) the undisputed facts show 31 years of work in or around coal mines; 2) the claimant has not been employed since leaving the mines; 3) the claimant is now 66 years of age; 4) five doctors including two B readers have read claimant's x-rays as showing pneumoconiosis, and 6) claimant is entitled to, but has been denied any benefit from, the presumption that he has pneumoconiosis under 20 C.F.R. Sec. 727.203.
 
 
 26
 I would reverse and remand for award of benefits.
 
 
 
 *
 Honorable Eugene E. Siler, Jr., United States District Court for the Eastern and Western Districts of Kentucky, sitting by designation
 
 
 [1]
 Section 727.203 Interim Presumption
 (a) Establishing interim presumption. A minor who engaged in coal mine employment for at least ten years will be presumed to be totally disabled due to pneumoconiosis, ... if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see Sec. 410.428 of this title);
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in Sec. 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table: [table omitted]
 * * *
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment; ...
 
 
 [2]
 Section 727.203(d)
 (d) Failure of miner to qualify under the presumption in paragraph (a) of this section. Where eligibility is not established under this section, such eligibility may be established under Part 718 of this subchapter as amended from time to time.