**John FIFE, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 88–4060.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 8, 1989.

Decided Sept. 5, 1989.

---

Dorothy B. Stulberg, Mostoller & Stulberg, Oak Ridge, Tenn., for petitioner.

Michael J. Denney, Cheryl Blair, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondent.

Before MARTIN, MILBURN and BOGGS, Circuit Judges.

PER CURIAM.

John Fife appeals from the decision of the Benefits Review Board (BRB) denying him black lung benefits. Fife alleges that he developed pneumoconiosis from thirty-two years work in the coal mines. Upon our review of the record, we affirm the decision of the Board.

I

Fife, who was born on September 21, 1912, first filed for social security disability benefits in 1971. In April 1978, after having been denied social security benefits several times, he elected to have the Department of Labor (DOL) review his claims under the Black Lung Benefits Reform Act of 1977. In November 1980, the DOL denied his application. In July 1983, Fife received his first hearing in front of an administrative law judge (ALJ), and in May 1984, the ALJ awarded Fife benefits, finding that the claimant had successfully established a claim under 20 C.F.R. Sec. 727.-203(a)(1).

The Director, however, subsequently appealed the grant of benefits to the BRB. In August 1986, the Board remanded the case back to the ALJ because it found that the ALJ had: (1) mistakenly stated that one x-ray reading was positive for pneumoconiosis, when, in fact, it was negative; (2) incorrectly credited the report of one doctor over another on the basis of the film quality; and (3) and referred to one positive x-ray reading as having been done by a B-reader, when the reader had not yet been so certified.

By the time the case was remanded, the original ALJ had left his position, and a new ALJ was assigned to the case. In February 1987, the new ALJ issued a decision denying benefits. Fife appealed to the Board, which affirmed the ALJ's decision. This appeal followed.

The medical evidence presented consists of three chest x-rays that have been interpreted seven times and five medical examinations. The first x-ray, dated July 8, 1971, was read three times, with two readings (Drs. Stallworth and Whittelsey) being negative for pneumoconiosis. The positive interpretation was made by an unidentified doctor. The second x-ray, dated July 28, 1977, was read as positive for pneumoconionsis by Dr. William Swann. Swann's

qualifications were not in the record at the time of the reading. This x-ray was read negatively by Dr. D.R. Brodie.[1] His qualifications were also not in the record at the time of review. The last x-ray was taken on December 12, 1980. It was read as positive by Dr. Sheldon Domm and negative by Dr. W.S. Cole. Cole, however, is a board-certified radiologist and a B-reader.

The first physical examination was done in May 1971 by Dr. Thomas Lomasney at a hospital in Knoxville, Tenn. Lomasney diagnosed diaphragmatic hiatus hernia and gastroesophageal reflux with aspiration bronchitis. He made no finding of pneumoconiosis. The second recorded examination was done by Dr. S.G. McNeeley in February 1973. McNeeley, Fife's treating physician since 1970, found that Fife suffered from a shortness of breath and that he could not work in the mines due to his respiratory problems, which included a cough. McNeeley concluded that he could not determine if Fife's disability resulted from black lung or from aspiration bronchitis.

The third examination, accompanied by x-rays and pulmonary function studies, was performed by Dr. Sheldon Domm. Domm found that the x-rays and pulomonary functions studies indicated the presence of pneumoconiosis. A DOL consulting physician named Dr. Burki, however, later found, in reviewing the written record of the studies, that the tests were improperly performed. Burki concluded that the poor performance was due primarily to the claimant's lack of effort. Domm found Fife's lungs clear. He concluded that the claimant suffered from a moderately severe respiratory impairment that "would prevent engaging in strenuous labor—would not prevent engaging in light work."

The final examinations were performed by Dr. Swann in July 1977 and July 1980. Swann concluded after the first examination that Fife suffered from black lung with a minimal impairment, but recorded no abnormal findings. In 1980, after doing a blood gas study, Swann, while concluding

that the claimant suffered from dyspnea, diagnosed chronic bronchitis by history.

At his hearings, Fife testified that he began working in the coal mines in 1937. He worked in underground mines until 1955, and from 1955 until his retirement in 1969, he worked above ground. Fife testified that he has trouble breathing and suffers from coughing spells. His daughter confirmed these symptoms and testified that Fife could walk only a quarter mile on level ground and could not climb hills.

The ALJ, on remand, found that the claimant could not successfully invoke the interim presumption under Sec. 727.-203(a)(1) because the x-ray evidence as a whole did not indicate that the claimant suffered from pneumoconiosis. The ALJ also found that the claimant could not invoke the presumption under Sec. 727.-203(a)(4) even though the claimant presented a medical report, that of Dr. Domm, that indicated he could not do his former coal mine work. The ALJ rejected that report because he found it to be unreliable. The ALJ also found that none of the examining doctors stated that the claimant suffered from a respiratory ailment and that more recent reports did not find that Fife was disabled. Finally, the ALJ found that the claimant could not invoke the presumption under Part 410 of the regulations because he presented no proof of disabling pneumoconiosis.

## II

■■■ The decision of an ALJ concerning the grant of black lung benefits must be upheld if is supported by substantial evidence, even if the reviewing court disagrees with the ALJ's factual findings. *Engle v. Director, O.W.C.P.*, 792 F.2d 63, 64 (6th Cir.1986). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The reviewing court affords the same review to the decision of the ALJ as does the BRB. *Warman v.*

1. It is Brodie's reading that the first ALJ termed positive, when it was in fact negative.

*Pittsburg & Midway Coal Min. Co.,* 839 F.2d 257, 261 (6th Cir.1988).

## III

Fife first argues that the ALJ erred in finding that he could not invoke the interim presumption favoring a disability finding contained in Sec. 727.203(a)(1). This presumption is invoked when the preponderance of the x-ray evidence in the record establishes the presence of pneumoconiosis. *Mullins Coal Co v. Director, O.W.C.P.,* 484 U.S. 135, 108 S.Ct. 427, 431, 98 L.Ed.2d 450 (1987). The ALJ found that the claimant could not invoke the presumption because the record showed that out of the seven x-ray readings, four were negative, and, of the three positive readings, none was by a B-reader. In addition, the two most recent x-rays were interpreted as negative by B-readers.

Fife counters this analysis by arguing that Swann's positive reading was not given the weight it deserved because of the ALJ's failure to consider Swann a B-reader. While the record shows that Swann did not indicate he was a B-reader when he submitted his reading, the claimant insists that Swann was a B-reader at the time and, in any event, Brodie, whose report was used to question Swann's, also did not indicate he was a B-reader on his report.

We find that there is substantial evidence for the ALJ's findings. As the ALJ pointed out, the list of B-readers kept by the Department of Health and Human Services did not have Swann listed as a B-reader until 1979. (His reading took place in 1977) Also, even if Swann were a B-reader, the ALJ was still justified in weighing the negative readings, especially the one by B-reader Cole, against Swann. Given that the negative readings outnumbered the positive and one of them was by a B-reader, we conclude that substantial evidence supports the decision of the ALJ.

## IV

The claimant next argues that the ALJ erred in holding that Fife could not invoke the interim presumption under Sec. 727.-203(a)(4). This presumption is invoked when the claimant, by the preponderance of the evidence, demonstrates that medical evidence other than x-rays, blood gas tests, or ventilatory studies, including a documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. Sec. 727.203(a)(4). The ALJ found that this presumption was not invoked because the only medical opinions that stated that Fife was disabled from doing his previous work were either not well-reasoned or were contradicted by other, more credible, evidence.

The first opinion criticized by the ALJ was that of Dr. Domm. Domm found that Fife was disabled from strenuous labor (but not from light work). The ALJ found that this report was not well-reasoned because the pulmonary function studies relied upon by the doctor were later termed unreliable by a DOL physician and because Domm's x-ray readings were contradicted by other, more qualified doctors. The second opinion discounted by the ALJ was Dr. McNeeley's 1973 report stating that the claimant was unable to work in the mines due to his cough and shortness of breath. The ALJ rejected McNeeley's conclusion primarily because he did not specify whether Fife's impairments were due to pneumoconiosis or the bronchitis resulting from the claimant's hernia. The ALJ also discounted the report because other, later reports, such as Swann's, did not state any findings of disability. The ALJ concluded that because pneumoconiosis is a progressive disease, the more recent exams should have reported impairment resulting from the disease. Because no such impairment was reported, the ALJ concluded that the impairments reported by McNeeley resulted from the hernia, which is not a respiratory ailment arising out of coal mine employment.

The claimant argues that the ALJ erred in discounting these diagnoses. First, he contends that all he had to do under (a)(4) was present medical evidence that he suffered from a respiratory ailment that prevented him from working in the coal mines. Conversely, he did not have to show either

that this ailment resulted from a disease contracted due to coal mine employment or that it disabled him from doing all work, as opposed to his coal mine work. Fife also argues that the ALJ erred in dismissing Domm's conclusions simply because the pulmonary studies were later criticized by the DOL doctor. Domm, Fife argues, did not primarily rely on these studies when making his conclusions. The claimant lastly argues that Swann's reports, rather than discrediting McNeeley's reports, support those findings because Swann, in 1980, found that Fife suffered from chronic obstructive pulmonary disease.

■ It is true, as Fife states, that in order to receive black lung disability benefits, one need only show that one is disabled from doing one's coal mine job or from doing a closely comparable job. One need not show total disability. *Ratliff v. Benefits Review Bd.*, 816 F.2d 1121, 1123 (6th Cir.1987). Determinations, however, of whether a physician's report is sufficiently documented and reasoned are left to the trier of fact. *Moseley v. Peabody Coal Co.*, 769 F.2d 357, 361 (6th Cir.1985).

■ We hold that even though the ALJ erred in holding that the claimant must show, in order to invoke the presumption, that the respiratory impairment was caused by pneumoconiosis, the finding that Fife failed to invoke the presumption should still be affirmed.[2] Substantial evidence supports the ALJ's decision to discredit McNeeley's and Domm's reports. McNeeley's 1973 report can be discounted because Swann's more recent 1977 report, based on a full exam and a pulmonary function study, stated that the claimant was only minimally impaired. While Swann's 1980 report did diagnose chronic pulmonary disease, the report makes no comment as to any disability. Thus, Swann's reports, taken as a whole, while perhaps confirming the diagnosis of a pulmonary disease, discredits McNeeley's conclusion on total disability.

Domm's report was correctly discredited because the only piece of objective evidence he relied on, beyond a disputed x-ray reading, was the flawed pulmonary functions study. Domm did not report, for example, any abnormalities in the physical examination. In fact, he found Fife's lungs clear. There was, thus, substantial evidence to support the discrediting of both these medical reports by the ALJ.

We acknowledge that it is a close question, because of the ALJ's error concerning the claimant's need to show the cause of his respiratory ailment, as to whether the case should be remanded to the ALJ for a reconsideration of the (a)(4) question. It is true, as the Director states, that the ALJ cites Swann's reports as an additional reason for the rejection of McNeeley's conclusion. The ALJ, however, did not rely on Swann's finding of minimal disability only to discredit McNeeley's conclusions on that question, but, rather, also used Swann's findings as evidence in support of his conclusion that McNeeley did not specify that pneumoconiosis was the cause of the respiratory problems.

On balance, however, we find that the fact that the ALJ states that he attributed less weight to McNeeley's report because of Swann's finding of no disability is enough to avoid a remand. Swann's disagreement on the disability conclusion is sufficient evidence to discredit the contrary report. As to the Domm report, the ALJ was within his discretion in discounting the report due to the unreliable data on which it was based. Fife is thus left without a credible medical opinion in his favor, making him unable to invoke the presumption.

## V

■ The claimant next argues that the Chief ALJ erred in remanding this case to a new ALJ without first giving him notice. He argues that, had he known of the change, he could have requested a new hearing or asked to submit new evidence,

2. The Director concedes that both bronchitis and black lung are respiratory ailments and that, to invoke the interim presumption, the claimant need only show that he suffers from a disabling *respiratory* ailment. Whether the respiratory ailment was caused by coal mine work is a question for rebuttal.

especially as regards to the Part 410 issue. He also contends that the original judge, having heard the testimony, was in a better position to judge his credibility. In support of this argument, Fife cites *McRoy v. Peabody Coal Co.*, 11 Black Lung Rep. (MB) 1–107 (Ben.Rev.Bd.1987), which states that a claimant has the right to have a case remanded to the same ALJ so that the officer who heard the evidence could make the decision.

We disagree. This is not a case where the matter was simply referred to another ALJ. Here the original ALJ had left the agency, leaving remand as the only option. As to the notice problem, 29 C.F.R. Sec. 18.30 states that if an ALJ is unavailable, the Chief ALJ "may designate another administrative law judge for the purposes of further hearing or appropriate action." No notice, so as to allow additional hearings or submissions, is generally required. New hearings are required only when the evaluation of credibility is crucial to resolving the factual disputes involved. The Chief ALJ, in his remand order in this case, stated that questions of credibility were not controlling, and the claimant has not made any specific arguments as to why such questions are controlling. The new ALJ, in order to address the errors made by the first ALJ, simply had to evaluate the evidence under a different standard. The Chief ALJ acted well within his discretion when he appointed the new ALJ.

## VI

The claimant's final argument is that the ALJ erred in holding that Fife did not make out a case under 20 C.F.R. Part 410. Those provisions allow a claimant to win benefits if he can prove that he worked at least 15 years in the coal mines and has demonstrated by "other evidence" that he has a totally disabling respiratory or pulmonary condition. 30 U.S.C. 921(c)(4). The ALJ relied on his findings concerning the invocation of the (a)(1) and (a)(4) presumptions in order to reject this claim.

The claimant contends that the ALJ erred in rejecting his claim without considering the evidence of disability, other than the medical records. The claimant argues that, in determinations under this statute, where lay evidence of disability is presented, the amount of medical evidence needed to prove disability is small. Thus, the claimant argues that his testimony and that of his daughter describing his disability should have been given the greatest weight. This testimony, Fife argues, was not contradicted by the medical evidence. The medical and lay evidence combined, the claimant concludes, entitles him to the presumption.

We must again affirm the decision of the Board. Fife, exaggerates the role that lay evidence plays in the Part. 410 analysis. This case can be distinguished from cases such as those concerning the claims of a deceased miner. Lay testimony is accorded substantial weight when the miner is deceased because, in those cases, additional medical evidence cannot be secured. *Dempsey v. Director, O.W.C.P.*, 811 F.2d 1154, 1161–62 (7th Cir.1987). In this case, the entire focus has been on the medical evidence. In any event, the lay evidence here is mainly cumulative and does not prove that the claimant suffers from pneumoconiosis. Fife has testified that he has trouble breathing and that this trouble has hindered his ability to work. The medical evidence confirms that Fife has some trouble breathing. The relevant question, however, is the extent of this disability, and, on this question, the lay evidence is not much help. Without corroborating medical evidence of Fife's disability, benefits cannot be granted. For the foregoing reasons, the decision of the Benefits Review Board is AFFIRMED.