Bernie ADKINS, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; West Virginia Coal Workers' Pneumoconiosis Fund, Respondents.

No. 91–2903.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1991.

Decided Feb. 28, 1992.

---

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

## OPINION

K.K. HALL, Circuit Judge:

Bernie Adkins petitions for review of an order of the Department of Labor's Benefits Review Board (BRB) denying his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* We must decide whether the administrative law judge (ALJ) properly rejected an x-ray reading by a "B" reader in favor of two later readings by non-"B" readers, based solely on a "later evidence is better" theory. We hold that he did not, and hence reverse.

### I.

Petitioner Bernie Adkins was born in 1931. He spent 28 years working in coal mines, and last worked in October, 1982. He filed an application for black lung benefits on October 23, 1983. Because of the date it was filed, the claim was evaluated under the Department of Labor's permanent regulations at 20 C.F.R. Part 718.

The parties agree that Adkins has at least simple pneumoconiosis, and that the disease arose from coal mine employment. The only issue below and on review is whether he is totally disabled. Even this issue is narrowed, because Adkins does not challenge the ALJ's finding that he failed to establish total disability under any of the various methods available under 20 C.F.R. § 718.204(c) (blood gas tests, pulmonary function studies, and medical opinions). Adkins' sole argument is that he is entitled to the *irrebuttable* presumption of total disability where the claimant is "diagnosed" with complicated pneumoconiosis. 30 U.S.C. § 921(c)(3); 20 C.F.R. § 718.304.

The evidence on this narrow point presents an uncomplex conflict.[1] An x-ray

Edward L. Bullman, Shaffer & Shaffer, Madison, W.V., argued (George D. Blizzard, II, Shaffer & Shaffer, Madison, W.Va., on the brief), for petitioner.

Thomas Hammond Zerbe, West Virginia Coal Workers' Pneumoconiosis Fund, Charleston, W.Va., argued (Michael John Denney, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., on the brief), for respondents.

1. Because of our disposition of this case on other grounds, we do not decide whether the statute's reference to "diagnosis" of complicated pneumoconiosis relaxes the claimant's burden of proof.

taken April 15, 1982, was read by Dr. Bassali, a Board-certified and "B" reader,[2] as complicated pneumoconiosis, profusion 2/3, all lung zones. A November 30, 1983, x-ray was read by Dr. Al–Asbahi, a Board-certified, but not "B", reader. He concluded that Adkins had simple pneumoconiosis, profusion 1/0. Finally, on May 28, 1984, a third x-ray was taken. Dr. Subramanian, like Al–Asbahi Board-certified but not "B", read the x-ray as simple pneumoconiosis, profusion 1/0.

The administrative procedure crept along in its characteristic slowness. On April 24, 1987, the claim was referred to an ALJ; two years later, on April 19, 1989, a hearing was finally held. On May 24, 1989, the ALJ issued a terse opinion rejecting the claim. The judge first stated that Dr. Bassali's qualification as a "B" reader was not in the record, and it would be "inappropriate" for him to consider it. The ALJ continued:

> However, assuming his qualification outside the record can be considered, Dr. Bassali's finding was disputed by two findings of simple pneumoconiosis on two subsequent xrays. Since pneumoconiosis is progressive and since there are two findings of simple pneumoconiosis on two subsequent x-rays, I reject Dr. Bassali's finding.

On review, the BRB affirmed (cites omitted):

> In the instant case, the administrative law judge permissibly found the x-ray interpretation of Dr. Bassali, finding complicated pneumoconiosis category A, outweighed by the two more recent x-rays of record, both interpreted as establishing simple pneumoconiosis. Contrary to claimant's contention, the administrative law judge considered all the x-ray evidence of record and acted well within his discretion in according greater weight to the more recent x-ray evidence. Furthermore, the administrative law judge is not required to accord greater weight to the x-ray interpretation of Dr.

Bassali merely because he is a "B" reader.

Adkins petitions for review.

## II.

### A.

■ The "later evidence is better" rationale began as a reasonable way to discount old nonqualifying test results or physical examinations in favor of subsequent results that reveal deterioration of the miner's condition. In recent years the BRB has applied the concept wholesale, in situations, like this one, where it cannot have any logical force.

Recently, in *Gray v. Director, OWCP*, 943 F.2d 513 (4th Cir.1991), the claimant urged this court to reject the theory. Though we expressed skepticism about the validity of the "later evidence is better" rule, *id.* at 520–521, we were spared the task of rejecting it because we found that, contrary to the premise of the claimant's argument, the ALJ had independently weighed the reliability of each piece of evidence and had not "mechanically applied a later evidence rule." *Id.* at 521. Similarly, in *Greer v. Director, OWCP*, 940 F.2d 88 (4th Cir.1991), we found that pulmonary function tests taken two months apart were contemporaneous; consequently, we declined to address the "later is better" idea.

### B.

In this case, we find no reasoning below except "later is better." Consequently, we now make our earlier skepticism explicit: we reject the approach as applied to evidence that cannot be reconciled by reference to its sequence.

In a nutshell, the theory is: (1) pneumoconiosis is a progressive disease; (2) therefore, claimants cannot get better; (3) therefore, a later test or exam is a more reliable indicator of the miner's condition than an earlier one.

---

**2.** A "B" reader has demonstrated proficiency in interpreting x-rays for the presence or absence of pneumoconiosis by passing an examination given by the Appalachian Laboratory for Occupational Safety and Health. *See* 42 C.F.R. § 37.-51(b)(2); 20 C.F.R. § 718.202(a)(ii)(E).

This logic only holds where the evidence is consistent with premises (1) and (2)—i.e., the evidence, on its face, shows that the miner's condition has worsened. In that situation, it is possible to reconcile the pieces of proof. All may be reliable; they do not necessarily conflict, though they reach different conclusions. All other considerations aside, the later evidence is more likely to show the miner's current condition.

■ On the other hand, if the evidence, taken at face value, shows that the miner has improved, the "reasoning" simply cannot apply. *It is impossible to reconcile the evidence.* Either the earlier or the later result *must* be wrong, and it is just as likely that the later evidence is faulty as the earlier. The reliability of irreconcilable items of evidence must therefore be evaluated without reference to their chronological relationship.[3]

Without the "later is better" rationale, the ALJ's decision lacks any explanation why Dr. Bassali's opinion was not entitled to equal[4] or greater weight than Al–Asbahi's and Subramanian's. A primary method of evaluating the reliability of an expert's opinion is of course his expertise, and the regulations command that physicians' radiological qualifications be considered. 20 C.F.R. § 718.202(a)(1). Dr. Bassali is a "B" reader;[5] Al–Asbahi and Subramanian are not. As the BRB explained, the ALJ is not *required* to give Bassali's opinion more weight "merely" because he is a "B" reader. Nonetheless, the ALJ must give some reasoned explanation why Bassali's superior qualifications do not carry the day. "Later is better" is not a reasoned explanation.

■ Once again, we remind the BRB and ALJs that the "Act embodies the principle that doubt is to be resolved in favor of the claimant." *Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 156, 108 S.Ct. 427, 438, 98 L.Ed.2d 450 n. 29 (1987); *Greer,* 940 F.2d at 90 n. 3. The vacuous logic of the "later is better" rule and the ALJ's petty refusal to acknowledge Dr. Bassali's wellknown and in-the-record qualifications do not reassure us that this claim was evaluated with Congress' beneficent intent in mind.

The conflict in the evidence here goes only to the severity, and not the existence, of Adkins' pneumoconiosis. Resolving the conflict requires counting heads (i.e., any two opinions are better than one) or looking to qualifications. The first course is as hollow as "later is better"; the second is prescribed by the regulations. Therefore,

---

3. All cases cited by the ALJ and BRB to justify application of the "latest evidence" approach are BRB decisions. After oral argument, the respondent Fund cited supplemental authorities that, it asserts, show approval of the theory by the Sixth and Seventh Circuits. *Fife v. Director, OWCP,* 888 F.2d 365 (6th Cir.1989); *Conn v. White Deer Coal Co.,* 862 F.2d 591 (6th Cir. 1988); *Cook v. Director, OWCP,* 816 F.2d 1182 (7th Cir.1987); *Orange v. Island Creek Coal Co.,* 786 F.2d 724 (6th Cir.1986). None of these cases discusses the theory's logical underpinnings, and each involved a good deal of independent evidence from which to weigh the reliability of the conflicting tests. Nonetheless, to the extent any of these cases might imply approval of "later is better" under circumstances like those that confront us today, we simply disagree with them.

The Fund also belatedly cites a case from this circuit, *Prater v. Harris* 620 F.2d 1074 (4th Cir. 1980). We find nothing in *Prater* to support the respondent. *Prater* involved the "relation-back" rule, which, like "later is better," was derived from the progressive nature of pneumoconiosis.

We quoted with approval from a Fifth Circuit case that noted that "relation-back" was a means to "fill in gaps in the evidence," not to resolve conflicts. *Id.* at 1083 *quoting, Doss v. Califano,* 598 F.2d 419, 421–422 (5th Cir.1979). In affirming the Secretary's decision that the existence of pneumoconiosis did not relate back, we observed that "[h]ere there are no gaps in the evidence, only conflicts." *Id.*

4. Equally probative evidence creates a "true doubt," which must be resolved in favor of the miner. *Greer v. DOWCP,* 940 F.2d 88 (4th Cir. 1991).

5. The ALJ stated that Bassali's status as a "B" reader was not in the record. It is. Though the copy quality is very poor (which Adkins concedes), at the very top center of Bassali's report, almost cut off, is the block on the form where Bassali checked "B" to show his status. The BRB's opinion acknowledges that Bassali "is" a "B" reader, and does not mention the ALJ's reservations. We read the BRB's opinion as finding support in the record for Bassali's qualifications.

we believe that Dr. Bassali's opinion is at least as probative as two opinions from physicians of lesser rank.

We reverse and remand with instructions to award benefits.

REVERSED AND REMANDED.