28 F.3d 1208
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Blaine COPLEY, Petitioner,
v.
ARCH OF WEST VIRGINIA, INCORPORATED; Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 93-1940.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 11, 1994.
Decided June 21, 1994.
 
 On Petition for Review of an Order of the Benefits Review Board. (91-1867-BLA)
 ARGUED: Roger Daniel Forman, Forman & Crane, Charleston, WV, for petitioner.
 
 
 1
 Helen Hart Cox, United States Department of Labor, Washington, DC, for respondent Director;
 
 
 2
 Sean Patrick Harter, Robinson & McElwee, Charleston, WV, for respondent Arch of West Virginia.
 
 
 3
 ON BRIEF: Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Barbara J. Johnson, Counsel for Appellate Litigation, United States Department of Labor, Washington, DC, for respondent Director;
 
 
 4
 Henry C. Bowen, Robinson & McElwee, Charleston, WV, for respondent Arch of West Virginia.
 
 
 5
 Ben.Rev.Bd.
 
 
 6
 REVERSED AND REMANDED.
 
 
 7
 Before WIDENER and LUTTIG, Circuit Judges, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 
 OPINION
 WILSON, District Judge:
 
 8
 Blaine Copley petitions for review of a decision by the Benefits Review Board ("Board") affirming the denial of his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945 (1986). Because we find that the Administrative Law Judge ("ALJ") and the Board improperly evaluated the x-ray evidence, we vacate the order of the Board and remand for reconsideration consistent with this opinion.
 
 I.
 
 9
 Copley worked in the coal industry for twenty-nine years. His last period of employment was with the appellee, Arch of West Virginia ("Arch"). Copley retired in 1989 and claimed total disability from pneumoconiosis resulting from his work in the coal mines. He applied for black lung benefits on January 30, 1990, and the Department of Labor ultimately denied benefits. After a hearing, the ALJ denied Copley's claim for benefits, finding that Copley failed to establish either total disability or pneumoconiosis. On appeal, the Board affirmed, finding that Copley failed to establish that he had pneumoconiosis.[1] This appeal followed.
 
 II.
 
 10
 To establish entitlement to black lung disability benefits, a claimant must prove that he suffers from pneumoconiosis, that the pneumoconiosis arose out of his coal employment, and that he is totally disabled. 20 C.F.R. Secs. 718.202, 718.203, 718.204. Pursuant to section 718.202(a)(1)-(4), pneumoconiosis may be established by any one of four criteria: x-ray evidence, a biopsy, an available presumption in the regulations, or by reasoned medical opinion. The ALJ concluded that Copley had failed to establish pneumoconiosis under any of these applicable criteria. The Board agreed, holding that Copley had failed to establish pneumoconiosis either by x-ray evidence or reasoned medical opinion.[2]
 
 
 11
 The ALJ based his decision primarily on sixteen interpretations of two x-rays. The x-ray evidence consisted of two x-rays, one dated February 10, 1990 and the other dated December 19, 1990.[3] Ten physicians read the x-ray taken in February 1990. Six physicians, qualified as both B readers and Board Certified Radiologists ("BCRs"),[4] found the x-ray negative. Four physicians read the x-ray positive for pneumoconiosis: two qualified B readers and BCRs, one board certified physician, and one B reader. The second x-ray, taken in December 1990, was read a total of six times. Three physicians, one B reader and two qualified as both B readers and BCRs, found the x-ray to be negative. The remaining three physicians, one B reader and two physicians qualified as B readers and BCRs, found the x-ray to be positive for pneumoconiosis.[5] The ALJ considered these sixteen readings and concluded that the x-rays did not establish pneumoconiosis. In making that determination, the ALJ stated:
 
 
 12
 Nine were found to be negative for pneumoconiosis while seven were read as positive. All nine negative readings are by seven of the B readers. Six of the seven positive readings are by three physicians who are so qualified. The naes [sic] have it. (J.A. at 12.) Thus, the ALJ merely counted up the total number of interpretations without distinguishing between the two x-rays. The Board affirmed this evaluation stating that the "negative interpretations of record outweighed the positive interpretations based on the numerical superiority of the negative readings." We find this method of evaluating x-ray evidence to be problematic.
 
 
 13
 As stated above, the ALJ considered sixteen interpretations of two x-rays. In evaluating the x-rays, he simply counted the total number of negative readings and total number of positive readings and concluded that the x-ray evidence failed to demonstrate pneumoconiosis solely because there were more negative readings. This court has previously expressed its dissatisfaction, however, with resolving conflict through merely "counting heads" and again does so here. See Adkins v. Director, OWCP, 958 F.2d 49, 52 (4th Cir.1992). Moreover, even if a simple "head counting" approach were acceptable, the ALJ's methodology was flawed. Rather than determine whether each x-ray was positive or negative, the ALJ allowed the readings of one x-ray, by virtue of their numerical superiority, to control the question of whether the x-ray evidence established pneumoconiosis. That methodology encourages multiple readings in a quest for numbers and makes x-rays with fewer readings immaterial. It is, therefore, improper. Instead, the ALJ should consider each individual x-ray on its own merit. The conflicting interpretations of one x-ray should be evaluated to determine whether that individual x-ray is negative or positive. Conflicts between x-rays should then be weighed in context to determine whether there is pneumoconiosis.[6] If after reconsidering the x-ray evidence, the ALJ determines the x-rays demonstrate the existence of pneumoconiosis, the ALJ must revisit his determination as to total disability. The criteria used by a claimant to establish total disability include qualifying pulmonary function tests and qualifying arterial blood gas tests. 20 C.F.R. Sec. 718.204(c). The ALJ should carefully examine the pulmonary function tests and arterial blood gas studies that he neglected below. Although the ALJ recognized that Copley's arterial blood gas tests were qualifying, he incorrectly stated that Copley's pulmonary function tests were not. Indeed, both tests appear to have qualifying values pursuant to 20 C.F.R. Sec. 718, Appendices B and C.[7]
 
 III.
 
 14
 Based on the foregoing, the decision of the Board is reversed, and we remand with instructions to reconsider the evidence consistent with this opinion.
 
 
 15
 REVERSED AND REMANDED.
 
 
 
 [1]
 Because the Board concluded that Copley failed to establish the presence of pneumoconiosis, they chose not to address the ALJ's conclusion as to total disability
 
 
 [2]
 The ALJ's findings pursuant to sections 718.202(a)(2) and (3), biopsy evidence and available presumptions, were unchallenged on appeal to the Board
 
 
 [3]
 It also appears from the record that the ALJ considered a November 15, 1973 x-ray Copley submitted in a prior claim for benefits. The parties apparently agreed that this x-ray was not at issue because it was so remote. The ALJ found this x-ray to be "equivocal with one reading positive and one negative for pneumoconiosis." (J.A. at 12.)
 
 
 [4]
 A "B" reader has demonstrated proficiency in interpreting x-rays for the presence of pneumoconiosis by passing an examination the Appalachian Laboratory for Occupational Safety and Health administers. See 20 C.F.R. Sec. 718.202(a)(ii)(E). A Board Certified Radiologist ("BCR") has been certified in radiology by the American Board of Radiology, Inc. or the American Osteopathic Association. See 20 C.F.R. Sec. 718.202(a)(ii)(C)
 
 
 [5]
 The relevant x-ray evidence consisted of the following:
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 2/10/902/10/90Al-Asbahi--BCRpneum. 1/0 2/10/903/5/90Cole--BCR, Bnegative, 0/1 2/10/9010/31/90Wershba--BCR, Bnegative 2/10/9010/31/90Duncan--BCR, Bnegative 2/10/9011/6/90Hayes--BCR, Bnegative 2/10/905/2/91Spitz--BCR, Bnegative 2/10/905/6/91Wiot--BCR, Bnegative/COPD* 2/10/905/9/91Speiden--BCR, Bpneum. 1/0 2/10/905/9/91Bassali--BCR, Bpneum. 1/2 2/10/905/20/91Deardorff--BCR, Bpneum. 1/1 12/19/902/8/91Zaldivar--Bnegative 12/19/905/2/91Spitz--B, BCRnegative 12/19/905/6/91Wiot--B, BCRnegative/COPD* 12/19/905/8/91Speiden--B, BCRpneum. 1/0 12/19/905/13/91Bassali--B, BCRpneum. 1/2 12/19/905/20/91Deardorff--Bpneum. 1/1 * Chronic Obstructive Pulmonary Disease
 
 
 [6]
 Although the ALJ also concluded that the physician reports failed to demonstrate the existence of pneumoconiosis pursuant to section 718.202(4), we will not address that issue in depth here. The ALJ discounted Dr. Ranavaya's opinion and adopted the opinion of Dr. Zaldivar, the coal company expert. In doing so, the ALJ stated that he found Dr. Ranavaya's opinion as "little more than a positive x-ray interpretation which is outweighed by the majority of the readings.... His report will not support a finding of pneumoconiosis independent of the x-ray readings." (J.A. at 13.) In light of our conclusion that the ALJ erred in evaluating the x-ray evidence, the ALJ should also revisit this conclusion on remand
 
 
 [7]
 Copley's February 1990 arterial blood gas study provided qualifying results both at rest (pCO2 of 37 and pO2 of 58) and exercise ( pCO2 of 38 and pO2 of 57). The results of the December 1990 blood gas study were also qualifying at rest (pCO2 of 35 and pO2 of 62). Copley's pulmonary function tests, both in February and December of 1990, produced qualifying results. In February, the results prior to administering a bronchodilator were: FEV1-1.79; MVV-84.6; FVC-3.25. After administering the bronchodilator, the results were: FEV1 -1.87; MVV-83.3; FVC-3.34. The December 1990 test resulted in a FEV1 of 2.17, MVV of 76; and a FVC of 4.63