67 F.3d 294
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Oregon Jack DUNCAN, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor; Meadow River Coal Company,
formerly known as Sewell Coal Company, c/o The Pittston
Company Coal Group, Respondents.
 No. 94-2470.
 United States Court of Appeals, Fourth Circuit.
 Sept. 11, 1995.
 
 Judith Carroll Walz, Lewisburg, West Virginia, for Petitioner.
 Douglas Allan Smoot, JACKSON & KELLY, Charleston, West Virginia, for Respondents. ON BRIEF: Ann B. Rembrandt, JACKSON & KELLY, Charleston, West Virginia, for Respondent Meadow River.
 Ben. Rev. Bd.
 REVIEW DENIED.
 Before NIEMEYER, HAMILTON, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A former coal miner seeks review of a decision of the Benefits Review Board (Board) upholding the denial of his claim for black lung benefits. Because the administrative finding that the miner does not suffer from pneumoconiosis is supported by substantial evidence, we affirm.
 
 I.
 
 2
 Oregon Jack Duncan, an intermittent coal mine worker from 1950 to 1982, filed a claim for federal black lung benefits pursuant to the Black Lung Benefits Act (Act), 30 U.S.C. Sec. 901 et seq., on June 13, 1991. After the Department of Labor initially approved Duncan's claim, Meadow River Mining Company contested its liability and the case was forwarded to an administrative law judge (ALJ) for resolution. After conducting a hearing in which Duncan testified and a considerable amount of medical evidence was introduced, the ALJ issued a decision and order denying benefits. In his decision, the ALJ concluded that the x-ray evidence and medical opinions contained in the administrative record failed to establish that Duncan has pneumoconiosis. Duncan then appealed to the Board, which affirmed the ALJ's decision.
 
 II.
 
 3
 Both of Duncan's assignments of error allege that the ALJ improperly weighed the medical evidence in finding that he does not suffer from pneumoconiosis. Of course, our review is technically limited to the decision of the Board; however, to the extent that the Board reviewed the ALJ's factual findings, we review the Board's decision not only for legal error, but also " 'to make certain that the Board adhered to its statutory standard of review of factual determinations.' " Doss v. Director, Office of Workers' Compensation Programs, 53 F.3d 654, 658 (4th Cir.1995) (quoting Presley v. Tinsley Maintenance Serv., 529 F.2d 433, 436 (5th Cir.1976)). Accordingly, where, as in this case, the petition for review involves solely issues of weight and credibility of the evidence, we apply the same standard of review of the administrative record as the Board. Walker v. Director, OWCP, 927 F.2d 181, 183 (4th Cir.1991). As long there exists "substantial evidence"[1] in the record to support the ALJ's findings, then we must affirm those findings, even if we would conclude differently. Doss, 53 F.3d at 659; Hobbs v. Clinchfield Coal Co., 45 F.3d 819, 820 (4th Cir.1995).
 
 
 4
 In order to establish entitlement of benefits under the Act, a miner must prove: (1) the existence of pneumoconiosis; (2) that the pneumoconiosis resulted from coal mine employment; and (3) that the disease has rendered the miner totally disabled. Doss, 53 F.3d at 658. In this case, the ALJ concluded that Duncan had failed to establish by a preponderance of the evidence that he suffers from pneumoconiosis as defined by the Act; therefore, the ALJ denied benefits without proceeding to the second and third prerequisites to entitlement to black lung benefits. Accordingly, we need only address whether the ALJ properly concluded that Duncan failed to demonstrate the existence of pneumoconiosis.
 
 
 5
 Under the Act, a miner may demonstrate the presence of pneumoconiosis with any of the following: (1) chest x-ray readings; (2) a biopsy or autopsy; (3) presumptions contained in 20 C.F.R. Secs. 718.304, 718.305 or 718.306; or (4) a physician's "reasoned medical opinion." 20 C.F.R. Sec. 718.202(a); Napier v. Director, OWCP, 890 F.2d 669, 671 (4th Cir.1989). Duncan did not submit biopsy or autopsy evidence and was unable to avail himself of the regulatory presumptions; however, he did submit both x-ray evidence and medical opinion evidence to establish the existence of pneumoconiosis. It is the ALJ's assessment of these two categories of evidence that Duncan challenges.
 
 
 6
 Duncan first contends that the ALJ's finding that he failed to prove pneumoconiosis by x-ray evidence pursuant to 20 C.F.R. Sec. 718.202(a)(1) was not supported by substantial evidence. More specifically, Duncan objects to the ALJ's reliance on "numerical superiority" to determine whether the x-ray evidence contained in the record demonstrated the existence of pneumoconiosis. Duncan argues that basing conclusions solely on the number of medical reports supporting that conclusion gives employers an unfair advantage and circumvents the remedial nature of the Act.
 
 
 7
 Duncan bases his objection on the ALJ's statement that:
 
 
 8
 There are three x-rays taken between 1990 and 1992. Of 24 readings, 18 are negative for pneumoconiosis.... Based on numerical superiority, it is determined that the claimant has not established pneumoconiosis by x-ray proof.
 
 
 9
 Duncan v. Meadow River Coal Co., No. 92-BLA-1304, slip op. at 3 (April 21, 1993). Citing our decision in Adkins v. Director, OWCP, 958 F.2d 49 (4th Cir.1992), the Board upheld this application of the numerical superiority rule as within the ALJ's discretion. This was error.
 
 
 10
 First, Adkins does not stand for the proposition that an ALJ's decision may be based solely on the number of positive or negative test results. In fact, Adkins--in which we rejected the "later evidence is better evidence" rule--supports the contrary proposition:
 
 
 11
 The conflict of evidence here goes only to the severity, and not the existence, of Adkins' pneumoconiosis. Resolving the conflict requires counting heads (i.e., any two opinions are better than one) or looking to qualifications. The first course is as hollow as "later is better "; the second is prescribed by the regulations.
 
 
 12
 Id. at 52 (emphasis added). Thus, in direct conflict with the rule of numerical superiority, our decision in Adkins ultimately rejected the medical opinions of two less qualified physicians in favor of a single opinion by a more qualified physician. Id. at 52-53.
 
 
 13
 Formulaic rules such as the numerical superiority rule are contrary to the truth-seeking goals of the Act. See Sahara Coal Co. v. Fitts, 39 F.3d 781, 782-83 (7th Cir.1994) (Posner, C.J.). More importantly, such a mechanical rule undermines the ALJ's role as the primary assessor of the strength and credibility of evidence, as well as undermining an entire administrative process designed to compensate those who are truly debilitated by pneumoconiosis, see 30 U.S.C. Sec. 901, rather than those who simply amass the largest number of favorable test results. As Duncan correctly asserts, the numerical superiority rule provides an almost insurmountable obstacle to claimants litigating against large coal companies, whose financial resources would guarantee victory if the battle were simply a matter of gathering the most x-ray readings. See Woodward v. Director, OWCP, 991 F.2d 314, 321 (6th Cir.1993) ("when one party is able to hire significantly more experts because it has infinitely more resources, the truth-seeking function of the administrative proceeding is skewed and directly undermined"). Furthermore, such a battle to collect the most x-ray evidence would inevitably result in wasted financial resources.
 
 
 14
 Id.
 
 
 15
 Accordingly, we now make explicit what was implicit in Adkins : Under the Act, an ALJ may not weigh medical evidence solely on the basis of numerical superiority. In other words, simply "counting heads" will not suffice. Adkins, 958 F.2d at 52. While numerical superiority may be a valid factor to be considered in certain circumstances--particularly where, as here, the record contains a number of x-ray reports simply listing cursory diagnoses--such a quantitative analysis must be coupled with a reasoned study of the quality of the evidence. Fitts, 39 F.3d at 782 ("[w]hen as is normal in these [black lung] cases the same x-ray is read by a number of different physicians, who note their interpretation but do not give reasons, the balance of opinions is entitled to some though not controlling weight"); Woodward, 991 F.2d at 321 ("consideration of merely quantitative differences, without an attendant qualitative evaluation of the x-rays and their readers, is legal error").
 
 
 16
 Although the ALJ erroneously relied on the quantity of x-rays unfavorable to Duncan, i.e., the numerical superiority of the x-ray readings finding no pneumoconiosis, that error was harmless in this case. This is so because the ALJ also based his ultimate conclusion--that Duncan does not suffer from pneumoconiosis--on an assessment of the quality of the x-ray evidence. First, the ALJ indicated that he considered Dr. Paul S. Wheeler to be the most qualified of those who interpreted Duncan's chest x-rays. Dr. Wheeler, who the ALJ noted is a board-certified radiologist and serves as "head of the pneumoconiosis section of the Johns Hopkins Hospital," read all three of Duncan's x-rays. Moreover, Dr. Wheeler was the only one of the readers to explain his methods of reading and interpreting chest x-rays and to give a detailed and understandable explanation of his findings; his deposition containing this explanation is included in the administrative record. In light of Dr. Wheeler's impressive credentials, the ALJ accorded his finding of no pneumoconiosis "substantial weight." Additionally, the ALJ credited the opinion of Dr. Gregory J. Fino, who submitted diagnostic reports on all three x-rays. Like Dr. Wheeler, Dr. Fino concluded that Duncan's x-rays demonstrated no evidence of pneumoconiosis, a conclusion that the ALJ also accorded substantial weight. Further, the ALJ specifically discredited the opinion of Dr. George L. Zaldivar on the basis of Dr. Zaldivar's inability to find pneumoconiosis with any degree of certainty. Although the ALJ only specifically commented on these three x-ray readers, these comments evidence his review of the x-ray reports and his conclusion that the diagnoses of Drs. Wheeler and Fino were the most persuasive. The ALJ's analysis may have fallen below the ideal; however, he stated a sufficient basis for his conclusion that Duncan had failed to demonstrate the existence of pneumoconiosis under 20 C.F.R. Sec. 718.202(a)(1). Therefore, the ALJ's reliance on numerosity was harmless in light of his additional reliance on the qualifications and findings of Drs. Wheeler and Fino.[2] Cf. Woodward, 991 F.2d at 321.
 
 
 17
 Consequently, we agree with the Board's conclusion that the ALJ relied upon substantial evidence in reaching his decision that Duncan had not met his burden of demonstrating pneumoconiosis by x-ray evidence.
 
 
 18
 Duncan's second and final argument is that the ALJ's denial of benefits under 20 C.F.R. Sec. 718.202(a)(4)--which permits proof of pneumoconiosis by way of a "reasoned medical opinion"--was not founded on substantial evidence. Essentially, Duncan contests the weight the ALJ attributed to the opinions of Dr. A.R. Piracha and Dr. Donald L. Rasmussen, both of whom physically examined Duncan and found him to have pneumoconiosis. As a corollary, Duncan asserts that the ALJ improperly relied instead on the opinions of one examining physician and three non-examining physicians, all of whom found no pneumoconiosis.
 
 
 19
 In his decision, the ALJ gave a detailed analysis of each of the seven medical reports[3] contained in the record and accorded either "substantial" or "little" weight to each opinion. Because he determined that Drs. Piracha and Rasmussen failed to provide a detailed discussion of the x-ray evidence, the ALJ attributed little weight to their respective opinions. Therefore, since the reports of Drs. Piracha and Rasmussen were the only two reports to diagnose Duncan with pneumoconiosis, and since the ALJ concluded that all but one of the remaining reports were entitled to substantial weight,[4] the ALJ found that Duncan had failed to establish pneumoconiosis by a preponderance of the evidence under Sec. 718.202(a)(4) as well.
 
 
 20
 As the ultimate fact finder, an administrative law judge has substantial discretion in assigning weight to medical evidence, including the discretion to accept or reject any part of a medical expert's opin ion. Avondale Shipyards, Inc. v. Kennel, 914 F.2d 88, 91 (5th Cir.1990). Furthermore, assessing the validity of medical opinions is a purely factual determination reserved for the administrative law judge. See Doss, 53 F.3d at 658. Absent an error of law, such findings based on substantial evidence are subject to neither the Board's, nor our, review. Id.[5] We therefore affirm the Board's conclusion that the ALJ relied on substantial evidence in finding that Duncan did not establish pneumoconiosis according to Sec. 718.202(a)(4). Beyond this, we cannot and will not engage in a reweighing of the medical evidence.[6] PETITION FOR REVIEW DENIED
 
 
 
 [1]
 "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938))
 
 
 [2]
 Both the ALJ and the Board mistakenly treat Dr. Wheeler's deposition testimony as a "medical report" for purposes of Sec. 718.202(a)(4). However, Dr. Wheeler examined only Duncan's x-rays and his deposition was limited to a discussion of his credentials, technique and interpretation of Duncan's x-rays. Dr. Wheeler did not examine any other medical evidence in reaching his diagnosis; therefore, his deposition is essentially a detailed x-ray study. Since this error in nomenclature did not effect the substance of Dr. Wheeler's findings or the weight the ALJ and Board attached to those findings, it was harmless
 
 
 [3]
 As noted previously, we agree with Duncan's assertion that Dr. Wheeler's deposition should not be treated as a comprehensive medical report under Sec. 718.202(a)(4). Accordingly, we do not consider his deposition testimony for the purpose of determining whether substantial evidence supports the ALJ's conclusion that the medical reports contained in the record fail to establish pneumoconiosis
 
 
 [4]
 The ALJ declined to assign substantial weight to the report by Dr. Zaldivar due to its inconclusiveness
 
 
 [5]
 Duncan asserts that the opinion of the sole examining physician to find no pneumoconiosis, Dr. Shawn Chillag, should not have been accorded substantial weight because Dr. Chillag did not address all of the medical evidence in Duncan's file. However, this argument does not get Duncan very far since, even if we were to reject Dr. Chillag's opinion, three opinions by non-examining physicians to which the ALJ attributed substantial weight remain in the record to provide an ample basis for the ALJ's decision. In effect, Duncan wants us to weigh these remaining three opinions against his two favorable opinions by examining physicians and to adopt the type of mechanical rule he previously urged us to reject, i.e., that an examining physician's medical opinion is per se entitled to greater weight than the opinion of a non-examining physician. As we have done before, we again decline to adopt such a rule. See Grizzle v. Pickands Mather and Co., 994 F.2d 1093, 1097 (4th Cir.1993) ("[n]either this circuit nor the Benefits Review Board has ever fashioned either a requirement or a presumption that treating or examining physicians' opinions be given greater weight than opinions of other expert physicians")
 
 
 [6]
 Duncan also argues that the ALJ erred in failing to make a factual finding regarding the length of his coal mine employment. Although it is true that the ALJ made no such determination despite specifically listing "length of coal mine employment" as one of the issues to be resolved, the issue is moot in light of our conclusion that substantial evidence supports the ALJ's finding of no pneumoconiosis. In this particular case, length of coal mine employment would be relevant only to the question of causation, see 20 C.F.R. Sec. 718.203(b), a question we need not reach