UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CONSOLIDATION COAL COMPANY,
Petitioner,

v.

GEORGE W. MCGINNIS; DIRECTOR,

No. 98-2452

OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order of
the Benefits Review Board.
(97-1562-BLA)

Submitted: June 25, 1999

Decided: October 20, 1999

Before ERVIN,* NIEMEYER, and LUTTIG, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

William S. Mattingly, JACKSON & KELLY, Morgantown, West
Virginia, for Petitioner. Barbara E. Holmes, BLAUFELD & SCHIL-
LER, Pittsburgh, Pennsylvania, for Respondents.

_____

*Judge Ervin was assigned to the panel in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel pursuant to 28 U.S.C. § 46(d).

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Consolidation Coal Company ("employer") petitions for review of a decision of the Benefits Review Board ("Board") affirming an administrative law judge's ("ALJ") decision to award black lung benefits to George McGinnis, a former coal miner. In reviewing black lung claims, we determine whether the decisions below are supported by substantial evidence and in accordance with law. See Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). In determining whether an ALJ's factual determinations are supported by substantial evidence, we consider whether the ALJ has addressed the relevant evidence and sufficiently explained his rationale for crediting certain evidence. See Milburn Colliery Co. v. Hicks, 138 F.3d 124, 128 (4th Cir. 1998). We review decisions of law made by the ALJ and the Board de novo. See id.

The claim at issue arises under Part 718 of the applicable regulations. Under Part 718, a claimant must prove: (1) that he has pneumoconiosis; (2) that the disease arose out of his coal mine employment; (3) that he is totally disabled from performing his usual coal mining work; and (4) that his pneumoconiosis is a contributing cause of his total disability. See Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997). In this case, the first and fourth elements are in dispute. The ALJ found that claimant carried his burden of proof as to these elements based on the medical opinion evidence of record.

Specifically, the ALJ relied upon the opinions of Drs. Frome, Jaworski, and Lenkey to find both that the miner suffered from "legal" pneumoconiosis, see 20 C.F.R. § 718.201 (1998), and that coal dust exposure contributed to the miner's concededly totally disabling respiratory impairment. On appeal, employer contends that the ALJ committed numerous errors in crediting these opinions over the conflicting opinions of Drs. Altmeyer and Fino, who opined that the

2

miner's impairment was solely attributable to his lengthy history (50 to 60 pack/year) of cigarette smoking. Had the ALJ credited the latter opinions, the miner would be unable to establish either pneumoconiosis or disability causation.

The ALJ credited the former opinions on the grounds that they were more consistent with the miner's lengthy coal mine employment history (35 years), subjective complaints of shortness of breath, recent abnormal blood gas results and qualifying pulmonary function studies, and the progressive nature of pneumoconiosis. Initially, we disagree with the ALJ's conclusion that the reports of Drs. Jaworski and Lenkey actually tend to support the claimant's burden of proof. Dr. Jaworski never specifically found that coal dust exposure contributed to the miner's impairment. Rather, his 1995 report diagnosed moderately severe chronic obstructive airway disease, and the "etiology" section of his report stated: "Cigarette smoking with possible contribution of coal dust exposure." Early in his deposition, Dr. Jaworski again used equivocal language to describe the potential role of coal dust exposure in the miner's condition, stating that "there may be a component of obstruction from coal dust; but I don't know of any way to discriminate."

Even assuming that Dr. Jaworski initially found contribution from coal dust exposure, however, the depositions of he and Dr. Lenkey undermine the view that they continued to hold that belief after being confronted with additional evidence. At their depositions, each doctor was asked to comment on the significance of pulmonary function studies demonstrating that the miner's ventilatory function was normal shortly before his retirement and even several years after he retired and his exposure to coal dust ceased. Each responded that this evidence supported the conclusion that the miner's pulmonary impairment was attributable to smoking, rather than coal dust exposure, because the rapid deterioration of his condition after the cessation of coal dust exposure was uncharacteristic of the type of deterioration that one would expect from pneumoconiosis or age, but, conversely, was consistent with the sort of progression one would expect to be caused by cigarette smoking.

Despite these statements, the ALJ concluded that the"essence" of the opinions of Drs. Jaworski and Lenkey was that while cigarette

3

smoking was the primary cause of the miner's impairment, coal dust exposure also contributed. We find this conclusion unsupportable in light of the significant evidence we have outlined to the contrary. The deposition testimony of Drs. Jaworski and Lenkey amounted to outright recantations of the opinions these physicians previously expressed.

In addition to the problems associated with the interpretation of the opinions of Drs. Jaworski and Lenkey, we also find that the ALJ provided improper reasons for crediting these reports and Dr. Frome's report over the conflicting opinions of Drs. Altmeyer and Fino to find legal pneumoconiosis and disability causation. While the ALJ found their legal conclusions most consistent with the miner's subjective complaints and laboratory tests, there is no dispute among the physicians of record that the miner's history, symptoms and laboratory data are entirely consistent with an impairment solely attributable to smoking. Moreover, the abnormal or qualifying nature of a blood gas or pulmonary function test does not speak to the cause of an impairment but rather measures only its existence -- a fact that is conceded in this case. Even if the recent tests from 1995 could somehow support the conclusions of Drs. Jaworski and Lenkey in this case, however, they could not logically bolster the credibility of Dr. Frome's opinion, which was rendered in 1984, when the miner's objective tests revealed no abnormality. Also, while the ALJ found that the conclusion that coal dust exposure contributed to the miner's impairment was more consistent with the progressive nature of pneumoconiosis, we have explained that in fact even the physicians the ALJ relied upon stated that the deterioration in the miner's pulmonary condition was inconsistent with a condition caused by coal dust exposure.

Further, we find the ALJ's reliance on the length of the miner's coal mine employment to be misplaced. "Occupational exposure is not evidence of pneumoconiosis . . . but merely a reason to expect that evidence might be found." Sahara Coal Co. v. Fitts, 39 F.3d 781, 783 (7th Cir. 1994). Hence, we have cautioned that a lengthy coal mine history alone does not establish that a miner's lung disease or impairment are necessarily attributable to coal dust exposure. See Hicks, 138 F.3d at 535; Stiltner v. Island Creek Coal Co. , 86 F.3d 337, 338-39 (4th Cir. 1996).

4

Accordingly, we find that the decision of the Board affirming the ALJ's award of benefits in this case is not supported by substantial evidence. We therefore reverse the decision of the Board and remand to the Board for further remand to the ALJ with instructions to direct a denial of benefits. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

5