**Stanley J. STASIUM, Petitioner**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Respondent**

No. 01–3683.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) June 11, 2002.

File Aug. 19, 2002.

Before SLOVITER, ROTH and McKEE, Circuit Judges.

OPINION

McKEE, Circuit Judge.

Stanley Stasium has filed this petition for review of a decision of the Benefits Review Board in which the Board affirmed an Administrative Law Judge's denial of his claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. For the reasons that follow, we will affirm the Board's decision and dismiss the petition for review.

**I.**

Stasium worked as a coal miner in Pennsylvania for 4¼ years in the 1940s. He filed his claim for Black Lung benefits on March 15, 1994, alleging that he had a breathing problem that caused him to retire from gainful employment in 1986. The Department of Labor initially denied his claim. Stasium then filed a request for a hearing, which was held before Administrative Law Judge Kaplan on June 27, 1996.

In order to prove entitlement to benefits, Stasium must prove, *inter alia*, that he suffers from pneumoconiosis as that term is defined by the Black Lung Benefits Act and its implementing regulations. 20 C.F.R. §§ 718.201, 718.202; *see Penn Allegheny Coal Co. v. Williams*, 114 F.3d

22, 23 (3d Cir.1997). The evidence relevant to that determination consists of the opinions of four physicians. Drs. Ramakrishna and Levinson examined Stasium on behalf of the Director in 1994 and 1996, respectively. Dr. Majernick is Stasium's treating physician. Dr. Aquilina examined Stasium three times, but was not a treating physician. Drs. Majernick and Aquilina offered testimony on behalf of Stasium.

Dr. Levinson is board certified in internal medicine with a subspecialty in pulmonary diseases. He reported that Stasium had a 6 to 7 year coal mining history. He noted that Stasium did not put forth maximum effort on the pulmonary function test he conducted; that the results of the arterial blood gas test indicated normal oxygenation at rest; that the electrocardiogram revealed normal sinus rhythm; and that the chest x-ray was negative for the presence of pneumoconiosis. Based on his examination and testing, Dr. Levinson diagnosed arteriosclerotic heart disease, coronary artery disease, hypertension and exogenous obesity. He reported that Stasium did not appear to have a chronic respiratory or pulmonary impairment. Finally, he opined that the reduced pulmonary function tests were primarily due to poor patient effort.

Dr. Ramakrishna is board certified in internal medicine, pulmonary disease and critical care medicine. He recorded a coal mining history of 2 to 3 years. He reported normal physical examination results, a chest x-ray showing apical pleural thickening, a pulmonary function study indicating moderate restrictive lung disease, arterial blood gas results showing mild hypoxemia and an electrocardiogram showing a normal sinus rhythm. Dr. Ramakrishna diagnosed Stasium as suffering from hypertension and moderate restrictive lung disease, the etiology of which was unclear but with no evidence of clinical pneumoconiosis.

He concluded that Stasium was moderately impaired by his lung disease.

Dr. Majernick stated in a July 1995 letter that he began treating Stasium in May 1988 and was still his treating physician in 1995. He attached to his report a statement from Stasium documenting more than 69 months, or over 5¾ years, of coal mine work. Dr. Majernick reported Stasium had been hospitalized in 1993 for shortness of breath which led to a diagnosis of acute bronchitis with underlying chronic obstructive pulmonary disease ("COPD") but no cardiac component. A 1994 pulmonary function study showed moderate restriction and that Stasium complained of exertional dyspnea when walking. Based on x-ray, objective testing and history, Dr. Majernick concluded that Stasium has COPD due to exposure to coal dust. He discounted cigarette smoking as a cause of the COPD because Stasium's smoking history was minimal and occurred when he was a teenager.

Dr. Aquilina is board certified in anesthesiology. He examined Stasium on July 5, 1995. He noted Stasium complained of shortness of breath, beginning in the 1970's, exertional dyspnea, coughing and wheezing. These are Symptoms typical of coal workers' pneumoconiosis, particularly in a former coal miner who never smoked. Dr. Aquilina also recorded a 6 to 7 year coal mine employment history. He reported that Stasium's chest x-ray, read by Dr. Imperiale, was positive for pneumoconiosis with emphysema and his pulmonary function test evidenced a moderate restrictive impairment. Based on the history, physical examination and objective testing, Dr. Aquilina diagnosed coal workers' pneumoconiosis, causally related to dust exposure during Stasium's coal mine employment.

In deposition testimony, Dr. Aquilina reiterated his earlier findings. He also stated that he had examined and tested Stasi-

um again in May 1996 with similar results. He testified that Stasium is totally and permanently disabled by his respiratory impairment. Relying on a coal mining employment history of 7 years, or 7 to 8 years, Dr. Aquilina opined that Stasium suffers from coal workers' pneumoconiosis. However, he conceded that his opinion regarding the cause of Stasium's lung problems might change if Stasium had been employed as a coal miner for only 3.2 years.

ALJ Kaplan denied Stasium's claim for benefits. He credited Stasium with only 2½ years of coal mine employment. He also discredited the opinions of Drs. Majernick and Aquilina because they had both based their diagnosis of coal workers' pneumoconiosis on an inflated coal mine employment history. The ALJ, in rejecting Dr. Aquilina's opinion, also noted Aquilina's concession that if Stasium had been a coal miner for only 3.2 years, his opinion as to the cause of Stasium's respiratory difficulties might change. The ALJ found that this brought Aquilina's conclusions into doubt.

Stasium appealed to the Benefits Review Board. Both Stasium and the Director asserted that the ALJ erred by not applying the correct legal standard to determine if Stasium's twenty-one months as a coal truck driver (time the ALJ had not included in reaching his finding of 2½ years) fell within the Act's coverage. The Board agreed and remanded the case. The Board instructed the ALJ to reconsider the discredited medical testimony if a longer amount of coal mine employment were proved on remand. The Board further noted that if Stasium's truck driving time were included, he would have a total of 4¼ years of coal mine employment. In the Board's view, this amount of time "is not significantly less that (sic) the five and three-quarter years or the seven years relied on by the physicians who diagnosed pneumoconiosis, and who the [ALJ] discredited as relying on an inaccurate length of coal mine employment." App. at 52.

On remand, ALJ Kaplan accepted the parties' stipulation that Stasium had 4¼ years of coal mine employment. He found the weight of the x-ray evidence negative for pneumoconiosis. In reconsidering Stasium's medical evidence, he found Dr. Majernick's diagnosis of pneumoconiosis probative because the discrepancy between the 4¼ years of coal mining proven and the 5¾ years upon which Dr. Majernick relied was not a significant difference. The ALJ also noted that Dr. Majernick's diagnosis of COPD directly related to the Stasium's exposure to coal dust and met the definition of legal pneumoconiosis. App. at 45–46; see 20 C.F.R. § 718.201.

ALJ Kaplan determined that Dr. Aquilina's opinion lacked probative value because his diagnosis of pneumoconiosis was drawn solely from a positive x-ray reading that was outweighed by other evidence. The ALJ was also not persuaded by Dr. Aquilina because the doctor's opinion was based on a coal mine dust exposure history which, despite the Board's conclusion to the contrary, the ALJ found to be significantly greater than that which had been proven. ALJ Kaplan found the opinions of Drs. Ramakrishna and Levinson, who did not diagnose pneumoconiosis or any chronic respiratory impairment related to coal dust exposure, were reasoned and documented.

The ALJ, weighing all the evidence relevant to pneumoconiosis together, see 20 C.F.R. § 718.202, concluded that the single positive x-ray reading from Dr. Imperiale and the opinions of Drs. Majernick and Aquilina were insufficient to carry Stasium's burden of proof in light of six negative x-rays and the contrary opinions of Drs. Ramakrishna and Levinson. Accordingly, the ALJ found that Stasium failed to

prove the existence of pneumoconiosis by a preponderance of the evidence. Therefore, he denied Stasium's claim, and Stasium again appealed to the Board.

In a February 23, 1999 decision remanding Stasium's case for a second time, the Board affirmed the unchallenged finding of 4 ¼ years of coal mine employment. The Board agreed with Stasium that the ALJ erred in discounting Dr. Aquilina's opinion because of the significant discrepancy between the length of coal mine history proved (4¼ years) and that on which Dr. Aquilina relied (7 years). Consequently, the Board directed the ALJ to reconsider Dr. Aquilina's opinion, as he had been instructed to do in the Board's first remand. The Board also directed the ALJ to specifically consider whether Dr. Ramakrishna's opinion constituted affirmative evidence of the absence of pneumoconiosis. Finally, the Board directed the ALJ to fully analyze and explain his assessment of the evidence, as required by the Administrative Procedure Act.

On his third look, ALJ Kaplan noted that he had previously determined the weight of the x-ray evidence was negative for pneumoconiosis. Thus, he concluded that the only question before him was whether the medical opinion evidence established the existence of pneumoconiosis under 20 C.F.R. § 718.202(a)(4). He addressed the 2¾ year discrepancy between the 4¼ years of coal mine work history proved and the 7 year history upon which Dr. Aquilina relied. He took exception to the Board's holding that such discrepancy was insignificant, noting that the Board provided no valid basis for its conclusion and that, as fact finder, the ALJ has the authority to weigh the discrepancy and determined its significance. He found the discrepancy significant because Stasium's true work history was only 65% of that relied on by Dr. Aquilina. He pointed to Dr. Aquilina's testimony that his opinion of

the etiology of Stasium's disease might change with a work history of only 3.2 years instead of 7 to 8. Given Stasium's minimal exposure history, the ALJ concluded that the additional 2¾ years in dust exposure history relied on by Dr. Aquilina was significant, contrary to the Board's holding. Therefore, the ALJ discounted Dr. Aquilina's opinion and found that even were it probative, it was outweighed by the contrary opinions of Drs. Ramakrishna and Levinson.

The ALJ also reconsidered Dr. Ramakrishna's report and found it constituted affirmative evidence that Stasium did not have pneumoconiosis. He concluded that Drs. Levinson and Ramakrishna's opinions of no pneumoconiosis outweighed the contrary opinion of Dr. Majernick. Furthermore, stated the ALJ, even if Dr. Aquilina's report were probative of pneumoconiosis, Stasium would fail to meet his burden of proving the existence of the disease by a preponderance of the evidence because the competing medical opinion evidence would be in equipoise. Therefore, the ALJ once again denied benefits and once again Stasium appealed.

In a decision dated June 9, 2000, the Board held that by continuing to reject Dr. Aquilina's opinion because of the inflated coal mine history, the ALJ failed to comply with the Board's prior decision. The Board concluded that Drs. Aquilina's and Majernick's opinions were documented, reasoned opinions sufficient to support a finding of pneumoconiosis, absent contrary evidence. The Board vacated the ALJ's decision and remanded once again for consideration of all evidence relevant to establishing pneumoconiosis. However, citing ALJ Kaplan's refusal to follow its previous orders, the Board directed the Office of Administrative Law Judges to assign the case to another ALJ to take a fresh look at all of the relevant evidence.

On remand, Chief ALJ Vittone issued an order denying reassignment to a new ALJ. He reasoned that the Board both exceeded its statutory authority and lacked sufficient grounds for ordering reassignment because there was no indication that Judge Kaplan was biased. Therefore, he returned Stasium's case to ALJ Kaplan. Stasium did not appeal Chief ALJ Vittone's denial of reassignment and did not preserve any objection on the record at that time. Instead, when ALJ Kaplan ordered briefing of the remand issues, Stasium argued only the merits of his claim without any objection to ALJ Kaplan's authority to decide his case.

On August 31, 2000, ALJ Kaplan issued his fourth decision denying Stasium benefits. He noted that he and the Board had been at "loggerheads" through the last two remands, but stated that "this disagreement has been resolved" by the Board's June 9, 2000 decision "that Dr. Aquilina's opinion is reasoned and documented despite his reliance on [an inflated] coal mine employment history." App. at 11. Therefore, he accepted the Board's determination even though he still believed it to be erroneous.

ALJ Kaplan reviewed all the evidence relevant to the existence of pneumoconiosis. He found that the single positive x-ray interpretation did not support a finding of pneumoconiosis because it was insufficient to overcome the weight of six negative x-ray interpretations. He also reconsidered the four physicians' opinions in the record. He noted that the Board had not disturbed his finding that Dr. Ramakrishna's reasoned and documented opinion was affirmative evidence of the absence of pneumoconiosis. He accorded great weight to Dr. Ramakrishna's opinion because he is board certified in internal medicine, pulmonary disease and critical care medicine. The ALJ also found Dr. Levinson's finding of no pneumoconiosis

reasoned and documented and entitled to great weight given Levinson's board certifications in internal medicine and pulmonary disease. He reiterated his earlier determination that Dr. Majernick's diagnosis of COPD disease due to coal mine employment was a reasoned and documented medical opinion diagnosing pneumoconiosis, even though Dr. Majernick referred to a narrative report by a Dr. Cali which was not a part of the record. He noted that Dr. Majernick is Stasium's treating physician and is board certified in emergency medicine. He concluded that Dr. Aquilina's opinion, although reasoned and documented, was entitled to less weight because Aquilina relied on an x-ray report and a report of Dr. Cali, neither of which were part of the record and because Aquilina is a board certified anesthesiologist, not a specialist in pulmonary medicine.

Analyzing the four medical opinions, the ALJ accorded determinative weight to the opinions of Drs. Ramakrishna and Levinson finding no pneumoconiosis because these physicians have qualifications in pulmonary medicine that are superior to those of Drs. Majernick and Aquilina. He also opined that, even if Dr. Aquilina's opinion were given the same weight as the opinions of Drs. Ramakrishna and Levinson, the contrary evidence would at most be in equipoise and Stasium would not meet his burden of proof. Therefore, the ALJ denied Stasium's claim for benefits once again.

Stasium filed another appeal with the Board from ALJ Kaplan's denial of benefits and from Chief ALJ Vittone's order denying reassignment. Although he listed the refusal to reassign the case to a new ALJ as a challenged issue in his Petition for Review, he did not address that issue in his accompanying brief. *See* 20 C.F.R. § 802.211(b) (Petition for Review must be

accompanied by a supporting brief or other statement specifically listing the issues to be reviewed by the Board and which sets forth argument with respect to each issue). His brief limited his argument to the correctness of ALJ Kaplan's assessment of the medical opinion evidence.

The Board affirmed the ALJ's denial of benefits on September 18, 2001. The Board did not address the issue of ALJ Vittone's refusal to reassign the case on remand. The Board stated that the issue on appeal was the ALJ's consideration of the medical opinion evidence pursuant to 20 C.F.R. § 718.202(a)(4). The Board held that ALJ Kaplan properly reconsidered all relevant evidence and provided a sufficient rationale for his findings. It noted that the ALJ accepted that the opinions of Drs. Aquilina, Majernick, Ramakrishna and Levinson were all reasoned and documented, but it affirmed that it was in the ALJ's discretion to afford greater weight to the opinions of Drs. Ramakrishna and Levinson based on their superior credentials. Because the Board found that this was a permissible basis for the ALJ to distinguish between probative, but conflicting, medical opinions, the Board affirmed the ALJ's finding that the weight of medical evidence did not establish the existence of pneumoconiosis and precluded entitlement to benefits.

Stasium then filed a timely petition for review.

## II.

"We must examine the entire record and determine if the ALJ's decision is supported by substantial evidence." *Mancia v. Director, OWCP,* 130 F.3d 579, 584 (3d Cir.1997).

The Board is bound by the ALJ's findings of fact if they are supported by substantial evidence. Our review of the Board's decision is limited to a determination of whether an error of law has been committed and whether the Board has adhered to its scope of review. In doing so, we must independently review the record and decide whether the ALJ's findings are supported by substantial evidence. Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Id.* (citation omitted).

## III.

We are troubled and perplexed by the turf war waged by the ALJ, the Board and the Chief ALJ in this case. Stasium was 69 years old when he first applied for benefits. He is now 77 years old and is only now in a position to have this court review the merits of his application for benefits. Whether or not he suffers from Black Lung disease from employment as a miner, he is no doubt now suffering from whiplash from going back and forth, and up and down the review process. Indeed, the Director concedes that "the litigation of Stasium's case has been drawn out longer than necessary due to the ALJ's and the Board's actions." Director's Br. at 19.

Nevertheless, given our obligation to "independently review the record and decide whether the ALJ's findings are supported by substantial evidence," *Mancia v. Director, OWCP,* 130 F.3d at 584, we must deny Stasium's petition for review. Stasium complains that the ALJ failed to accord Dr. Aquilina's medical opinion greater weight. But, the Board affirmed the ALJ's credibility determinations based upon the superior credentials of the two physicians who were board certified in internal medicine and pulmonary disease. According greater weight to the opinions of physicians who have superior credentials is a permissible way of resolving conflicting medical opinions. *See Adkins v.*

*Director, OWCP,* 958 F.2d 49, 52 (4th Cir. 1992); *Sexton v. Director,* 752 F.2d 213, 215 (6th Cir.1985). Therefore, the ALJ's decision is supported by substantial evidence.

### IV.

For the above reasons, we will affirm the Board's decision and dismiss the petition for review.